IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MATTHEW WARD | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. ELH-11-3544 |
| ROBERT KOPPEL | * | |
| Defendant | * | |

\*\*\*

# MEMORANDUM

Matthew Ward, the self-represented plaintiff, has filed suit under 42 U.S.C. § 1983 against Robert Koppel, the Warden at the Chesapeake Detention Facility ("CDF"). Formerly known as Maryland Correctional Adjustment Center ("MCAC") or "Supermax," the facility is used as a federal pre-trial detention center.[1]

The defendant has filed a motion to dismiss or for summary judgment, supported by several exhibits.[2] ECF 13. Plaintiff opposes the motion. ECF 18. No hearing is necessary to resolve the matter. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, defendant's motion, construed as a motion for summary judgment, shall be granted.

**Factual Background**

Ward has been detained since November 2010, and claims that, during his detention, he has not received adequate treatment for a chronic condition that causes considerable pain. He

---

[1] Ward has been housed at CDF since November 2010, awaiting trial in federal court on charges of conspiracy to distribute and possession with intent to distribute Oxycodone, Morphine, Methadone, Hydromorphone, and Alprazolam. *See United States v. Ward, et al.*, Case No. ELH-10-701 (D. Md.). The criminal case was reassigned from Judge Benson Legg to me on April 19, 2012. The instant civil case was reassigned from Judge Legg to me in May 2012.

[2] Exhibit 5 consists of Ward's medical records during the relevant time, and is in excess of 200 pages.

seeks injunctive relief, asking the court to order surgery and oxycodone for him. *See* ECF 4.

The extensive medical records submitted to the Court reveal that Ward suffered injuries to his neck and lower back in 2006 during a motorcycle accident in which he skidded a few hundred feet across a road, landing in a ditch to avoid a tractor-trailer that had moved into his path. *See* ECF 13 at Ex. 5 at pp. 34 -35. As a result of the accident, Ward suffers from chronic lower back pain and pain to his arm. Ward claims that, prior to his incarceration, he was treated for his pain with Oxycodone. ECF 1 and 4.

Ward maintains that the treating physician at CDF, Dr. Michael Lawrence, did not review his medical history, which Ward had forwarded to him from the doctor who was treating him prior to his incarceration. He further alleges that, despite submitting numerous sick-call slips, Dr. Lawrence has not addressed his need for pain relief. Additionally, he insists that there is a court order requiring medical staff to treat his pain with Oxycodone pending surgery, which was also court ordered.[3] ECF 4.

In November 2011, Ward filed two Informal Inmate Complaint forms. *See* ECF 13 at Ex. 3. In his informal complaint dated November 14, 2011, plaintiff complained that he went to get his medications but medical did not have them. *Id*. at p. 1. Plaintiff also complained that it was the second time that day that the medical department did not have his medications. *Id*. A notation dated January 3, 2012, indicated that plaintiff was placed on the list to see the physician for follow up. *Id*.

In the informal inmate complaint dated November 19, 2011, plaintiff complained that he was in severe pain, and that the physician was attempting to give him a medication that would

---

[3] I am unaware of a court order requiring specific medical treatment for Ward.

not control his pain. *Id*. at p. 2. A notation indicated that plaintiff was seen on December 5, 2011, for his complaint. *Id*.[4]

In general, the defense maintains that Ward's complaints of pain have been addressed by medical staff. Moreover, the defense suggests that there is a legitimate concern that Ward abused Oxycodone in the past, making his requests for increased dosages of pain medication a possible drug-seeking tactic. *See* ECF 13 at Ex. 5, pp. 110, 125, 130-31 and 135-37.

Warden Koppel submitted a declaration, under oath, stating that he is aware of plaintiff's allegations as to a lack of proper medical care. ECF 13, Ex. 4. He also explained that he is not empowered to make medical decisions for detainees, but forwarded the letter he received from Ward, complaining of a lack of medical care, to the director for the medical contractor, Ms. Howard-Wilson. ECF 13 at Ex. 4.

The following information about plaintiff's medical care is derived from his medical records. *See* ECF 13, Ex. 5.

At his medical intake interview on November 18, 2010, plaintiff reported to Orchid Archer, R.N., that he was withdrawing from Oxycontin. Ex. 5, at pp. 135-135. He also reported taking Oxycodone daily, and stated that he last used that drug the previous day. *Id*. Archer completed a Clinical Opiate Withdrawal Scale form and described plaintiff's withdrawal as

---

[4] The defendant argues, *inter alia*, that to the extent plaintiff complains about conditions of confinement, he failed to exhaust his administrative remedies, available under state law and Maryland Department of Public Safety and Correctional Services regulations. *See* Md. Code (1999), Corr. Serv. Art. § 10-201 *et seq.*; Md. Code, Courts & Judicial Proceedings Article, § 5-1001, *et seq.* The Warden argues that exhaustion is required by the Prison Litigation Reform Act of 1995. *See* 42 U.S.C. § 1997e (a).

It appears to me that plaintiff's claim does not concern conditions of confinement. In any event, in view of my disposition of the case, I need not reach this issue.

being in the "mild" range, indicating that plaintiff should be "rechecked as ordered" and monitored. *Id*. at pp. 135-137.

On November 29, 2010, plaintiff reported to Krista M. Hrasar, a Licensed Clinical Social Worker, that he was in the latter phase of Oxycodone withdrawal. *Id*. at pp. 130-131.  The next day, November 30, 2010, he told a nurse that he was having back pain and also suffering from pain from a "bad tooth" that needed to be extracted. *Id*. at pp. 128-129.  Plaintiff was given 325 mg. of Tylenol and referred to the dentist. *Id*. at p. 128.

On December 15, 2010, plaintiff reported a history of cocaine use to M. Greene, a Licensed Clinical Professional Counselor ("LCPC"), but claimed that he stopped using that drug in 2004-2005. *Id*. at pp. 125-126.  It was noted that it was possible that plaintiff was "drug seeking" because, according to prior reports, plaintiff had a history of Oxycodone abuse. *Id*. at p. 125.  Plaintiff was referred to the medical department, and also to psychiatry for "further assessment for medication." *Id*.  At his initial psychiatric evaluation on December 17, 2010, plaintiff reported suffering from sleep disturbance, *id*. at pp. 122-124, and claimed he previously used crack cocaine. *Id*. at p. 122.

On January 3, 2011, plaintiff reported to Gregory Ross, M.D., that he had been receiving nine (9) tablets of Oxycodone on the "street," prescribed by a "pain specialist." *Id*. at pp. 118-121.  Plaintiff was also taking medications for anxiety and insomnia. *Id*. at pp. 112-117.

On November 9, 2011, plaintiff declined assistance from the psychology department, in writing. *Id*. at p. 46.  At his psychology intake interview on November 11, 2011, plaintiff reported that he was taking 270 mg. of Oxycontin daily. *Id*. at pp. 110-111 and 141-142 (duplicate).  The interviewer, Carol A. Barlow, LCPC, noted that plaintiff reported a history of opiate abuse, with the last use reportedly in 2010. *Id*.

Plaintiff was seen by Dr. Lawrence on November 18, 2011, for back pain. Dr. Lawrence also ordered X-rays. Ex. 5, at pp. 104-109. The records reflect a "presumed diagnosis" of Lumbago and Cervicalgia. *Id*. at 107. Dr. Lawrence also described plaintiff's symptoms as "chronic lbp and neck pain." *Id*.

Valerie Burrell, R.N., saw plaintiff on November 25, 2011. He reported that the Ibuprofen was not relieving his back pain. *Id*. at pp. 102-103. It was noted that plaintiff ambulated to the clinic with a steady gait. *Id*. at 102. Plaintiff was scheduled for an appointment with the chronic care clinic. *Id*.

At plaintiff's medical examination on December 3, 2011, he reported that he was taking Percocet daily for pain management. *Id*. at pp. 99-101; 138-140. He requested something stronger than Motrin for pain. *Id*. It was noted that plaintiff had reported to medical a week earlier for the same problem. *Id*. at 101. Plaintiff complained again of pain on December 5 and 10, 2011, and also requested an egg crate mattress. *Id*. at pp. 93-98. Also on December 5, 2011, plaintiff reported that his current medications were not working. *Id*. at pp. 44-45. Dr. Lawrence again saw plaintiff on December 21, 2011, for unrelated medical concerns. *Id*. at 90.

On January 6, 2012, Ward was seen by Dr. Lawrence for complaints of chronic pain and was scheduled to be seen in the chronic care clinic in one month. *Id*. at pp. 85-86. Oxycodone and other medications were prescribed, and Ward was to have a follow-up with physiatry.[5] He was seen by Cornell Shelton, M.D. at Bon Secours Hospital on January 10, 2012, for back and neck pain. *Id*. at pp. 39-41 and 85. X-rays ordered by Dr. Lawrence on January 13, 2012, *id.* at 83, were negative for acute fracture, dislocation, or subluxation of the right Tibia and Fibula, and alignment was noted as anatomical, with no evidence of "acute disease." *Id*. at 84.

---

[5] In the defense memo (ECF 13-1 at 8), the defendant incorrectly states that plaintiff was to have a follow-up with "psychiatry."

In April 2012, Ward wrote to Dr. Lawrence and requested a refill of Oxycodone and asked that the dosage be increased from two to three per day. *Id*. at pp. 60, 143-81. Additionally, Ward complained that the medications provided to him, Flexeril[6] and Cymbalta,[7] were not effective in controlling his pain. *Id*. at pp. 54-55.

Ward was evaluated for physical therapy on April 30, 2012. *Id*. at pp. 2-3, 18-20, 34-37. During the evaluation Ward expressed that his main concern was the pain he experienced in his lower back, which he described as constant and at times sharp. *Id*. at p. 34. He reported he was currently taking pain medication twice a day and claimed the pain was at a five on a scale of ten with the medication and seven on a scale of ten without it. *Id*. On May 18, 2012, Ward discontinued physical therapy. *Id*. at pp. 18-19.

On May 4, 2012, Ward again claimed his pain medications needed to be increased and asked for an egg crate mattress. *Id*. at p. 59. Despite his claim that he was in a lot of pain, medical staff noted that Ward's gait was steady when he walked into the clinic. *Id*. Ward made another request for an increase in Oxycodone medication on May 11, 2012. *Id*. at pp. 32-33. He continued to receive Oxycodone as well as other pain relief medications during the time frame relevant to this complaint. *Id*. at pp. 63-82 and 201-205.

**Standard of Review**

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md.

---

[6] Flexeril is a muscle relaxant used to treat skeletal muscle conditions. www.drugs.com/flexeril.

[7] Cymbalta is an anti-depressant used for treatment of depressive disorder, general anxiety, fibromyalgia and arthritis. www.drugs.com/cymbalta.

2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d at 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule

12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.).  This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.,* 637 F.3d 435, 448 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).  Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)).  "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin.*

8

*Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted).  But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Id.* (internal citations omitted).  Indeed, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id.* at 244-45 (internal citations omitted).

Plaintiff has not filed an affidavit under Rule 56(d).  Moreover, I am satisfied that it is appropriate to address the defendant's motion as one for summary judgment.

Summary Judgment is governed by Fed. R. Civ. P. 56(a).  It provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law.  *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986).  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  It has said:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id*. at 248.  There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court must, however, abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp.*, 477 U.S. at 323-24.

**Discussion**

To state a cause of action under 42 U.S.C. § 1983, there must be an allegation of a violation of a federal constitutional right or a right secured by federal law. *See Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689 (1979). The defendant argues that plaintiff has failed to allege a deprivation of any rights, either constitutional or statutory, that entitle him to relief under § 1983.

A pretrial detainee's claim relating to an alleged denial of medical care and adverse conditions of confinement are governed by the Fourteenth Amendment, which prohibits treatment so severe that it amounts to "punishment." The constitutional protections afforded a pretrial detainee under the Fourteenth Amendment are coextensive with those provided by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (*citing Martin v. Gentile*, 849 F. 2d 863, 870 (4th Cir. 1988)); *see also Riley v. Dorton*, 115 F. 3d 1159, 1167 (4th Cir. 1997) (pretrial detainee's Fourteenth Amendment right with respect to excessive force is similar to prisoner's Eighth Amendment right; both require more than *de minimus* injury).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (*citing Wilson v. Seiter*, 501 U.S.294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendant or his failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citing *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff members were aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). As the Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).

The Court does not suggest that plaintiff is not entitled to medical treatment for his medical condition. The right to treatment, however, is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added). Moreover, inmates do not have a constitutional right to the treatment of their choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle*, 419 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Fleming v. LeFevere*, 423 F. Supp.2d 1064, 1070-71 (C.D. Cal. 2006).

The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials "is

not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) (*citing Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984)).

To establish supervisory liability under §1983, a claim must be supported by evidence: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994). The *Shaw* Court also said, *id*. (internal citations omitted):

> To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. . . . Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.

Ward's claim against Koppel is predicated on his claim that Koppel did not do enough to intervene on his behalf to require the medical staff to provide him with the care he desires. Plaintiff's extensive medical records, submitted by the defendant, demonstrate that, while in custody, Ward has received considerable medical treatment for his chronic pain condition. To the extent Ward has not received the dosage of medication he desires, his disagreement with

medical decisions regarding care is not a sufficient basis for the finding of a constitutional violation.  Moreover, Koppel has affirmed under oath that he plays no role in the provision of medical care to CDF detainees, nor does he exercise authority over the medical care providers.  ECF 13 at Ex. 4.  Notwithstanding Koppel's lack of authority, he directed Ward's letter of complaint regarding the care he was receiving to appropriate personnel for a response.  *Id*.

In sum, it is clear that Ward has not established a deprivation of rights based on inadequate medical care.  Moreover, to the extent that Ward's claim is based on a theory of *respondeat superior*, there is no basis for such a claim under § 1983.  Accordingly, Koppel is entitled to summary judgment in his favor.

A separate Order follows.


December 17, 2012                             /s/
                                    Ellen Lipton Hollander
                                    United States District Judge